UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ERIC K. WILLIAMS                                          CIVIL ACTION

VERSUS                                                   NO. 11-583

MICHAEL J. ASTRUE, COMMISSIONER                          SECTION "F" (2)
OF SOCIAL SECURITY ADMINISTRATION

## ORDER ON MOTION;
## FINDINGS AND RECOMMENDATION

Plaintiff, Eric K. Williams, seeks judicial review pursuant to Section 405(g) of the

Social Security Act (the "Act") of the final decision of the Commissioner of the Social

Security Administration (the "Commissioner"), denying plaintiff's claim for

supplemental security income benefits ("SSI") under Title II of the Act. 42 U.S.C. §§

405(g), 1381a. This matter was referred to a United States Magistrate Judge pursuant to

28 U.S.C. § 636(b) and Local Rule 73.2(B).

Although ordered to file a memorandum of facts and law, Record Doc. No. 13,

plaintiff filed a timely "Motion for Summary Judgment and Brief in Support of Plaintiff's

Appeal." Record Doc. No. 14. He also filed a motion to supplement the transcript,

seeking to have this court consider medical evidence that the Appeals Council considered

and rejected as a basis for changing the outcome. Record Doc. No. 15. Defendant filed

a single memorandum in opposition to both motions. Record Doc. No. 17.

Having considered the submissions of the parties and the applicable law, and for the following reasons, IT IS ORDERED that plaintiff's motion to supplement the transcript is DISMISSED AS MOOT. Furthermore, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED and his complaint be DISMISSED WITH PREJUDICE.

## I.    PROCEDURAL HISTORY

Williams filed an application for SSI on April 6, 2009, alleging disability since November 15, 2006, due to a bulging disc in his back, numbness in his legs and toes and a burning sensation in his hip from his back to his feet. (Tr. 18, 102, 107). After his application was denied, he requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 3, 2010. (Tr. 29-55). At the hearing, Williams amended his alleged onset date to October 17, 2008 because the Commissioner had rendered an unfavorable decision on October 16, 2008 on plaintiff's previous application for disability insurance benefits. (Tr. 18, 32). On April 27, 2010, the ALJ issued a decision denying plaintiff's application for SSI. (Tr. 18-26). After the Appeals Council denied review on January 20, 2011, the ALJ's decision became the final decision of the Commissioner for purposes of this court's review. (Tr. 1-4).

II.    STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.    Substantial evidence does not support the ALJ's finding that plaintiff's impairments do not meet or medically equal Listing 1.04 for disorders of the spine.

B.    Substantial evidence does not support the ALJ's residual functional capacity assessment.

C.    The Appeals Council erred by failing to consider new and material evidence that plaintiff submitted to it after the ALJ rendered his decision.

III.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.    Williams has not engaged in substantial gainful activity since the application date of April 6, 2009.

2.    He has severe impairments consisting of degenerative disc disease of the lumbar spine with nerve root compromise at L5-S1 and hypertension.

3.    Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically including Listing 1.04 for disorders of the spine.

4.    He has the residual functional capacity to perform sedentary work, except that he requires the ability to alternate between sitting and standing on an hourly basis and must avoid industrial vibration.

5.    Although plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

6.	He is not capable of performing his past relevant work as a sawmill laborer, hand packager or stock clerk.

7.	Williams is capable of performing jobs that exist in significant numbers in the Louisiana and national economies, such as an information clerk, order clerk and general office clerk.

(Tr. 20-25).

IV.	ANALYSIS

A.	Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Perez, 415 F.3d at 461; Loza, 219 F.3d at 393.  This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Perez, 415 F.3d at 461. Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Id.; Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2009). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Perez, 415 F.3d at 461; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[1] The five-step

---

[1]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic

inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Perez, 415 F.3d at 461.

The claimant has the burden of proof under the first four parts of the inquiry. If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Id.; Newton, 209 F.3d at 453.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." Martinez, 64 F.3d at 174.

---

work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

B.    Factual Background

Williams testified that he was 36 years old and lived with his mother.  He completed the tenth grade and did not get a GED.  He testified that he last worked at a sawmill for 11 months, until he hurt his back on the job in 2006.  He said he previously worked for four years packing jars of oysters into boxes.  He stated that he worked for Wal Mart before that as a stocker in the meat department.  (Tr. 35-37).  He testified that his boss put him on light duty when he returned to work after having an MRI in 2006, but he was eventually fired because he was unable to perform the light duty.  He said he received a $14,000 settlement from an accident and has not worked since he was fired.

Plaintiff stated that he cannot work now because "half the time" he cannot get out of bed in the morning due to back and leg pain.  He said his mother does the cooking and brings food to him in bed.  (Tr. 37).  He testified that standing makes his pain worse, so he must lie down, but then he tosses and turns until he has to sit or stand up.  (Tr. 37-38).  He stated that he really cannot do anything except lie down or sit in a recliner chair.

Williams testified that he has an appointment to see a neurosurgeon at University Hospital in New Orleans on August 24, 2010 and that he wants to have surgery if it will help him feel better.  He said he cannot do anything that he used to do, such as grocery shopping, playing basketball and even dominoes, because to play dominoes requires constant sitting.  (Tr. 38).  He testified that he must ride in a scooter if he shops for groceries because he cannot walk very far, but that his mother actually does all the

shopping. (Tr. 38-39). Plaintiff estimated he could walk for one-half block before he would have to sit down because of pain in his lower back and pain and numbness in his right leg. He said his leg is numb down to two toes on his right foot. He stated that lying down is the only thing that relieves his pain. (Tr. 39).

Plaintiff said he had received injections of Demerol and Phenergan in his right hip the previous year at Lallie Kemp Medical Center, but the treatment only helped for two to three days. (Tr. 39-40). He testified that, on a typical day, he lies down most of the time. He said that sometimes a friend will visit him for an hour or two and that he goes to church every other Sunday. (Tr. 40). He said his 15-year old son visits him every day, while his 11-year-old daughter comes to see him once or twice a week, and that they sit and talk with him. (Tr. 41, 42).

Williams testified that he can sit for about 20 minutes before he needs to stand up and that he can stand for about 30 minutes if he can lean on something. He stated that he can lift a gallon of milk. (Tr. 41). He said he cannot bend over too well, but is able to dress and bathe himself. He testified that he lives with his mother and stepfather, and his stepfather shaves him. He described the pain in his back as a stabbing pain, like a toothache. (Tr. 42).

Plaintiff stated that he does not drive and last drove about two years ago because he cannot focus on driving or sit still for very long. (Tr. 42-43). He testified that his

mother drives him most of the time and that sometimes he will ride with a friend to the store or to sightsee for a little while. He said he does not go anywhere else. (Tr. 43).

Williams testified that he does not wash any dishes or clothes, but helps his mother fold the laundry. He said he reads magazines and plays video games for about 20 minutes at a time. (Tr. 44). He stated that he used to go fishing before his accident, but has not fished since then. He said the only exercise he gets is walking 20 feet to the mailbox. He testified that the only physical therapy he ever did "was from the Social Security doctor" and that no doctor has told him to do any stretching. He said he is six feet one inches tall and weighs 240 pounds. (Tr. 45). He stated that he smokes one-half pack of cigarettes per day, does not drink alcohol and used to smoke a little marijuana. He said the last drink he had was around Christmas 2009 and the last time he smoked marijuana was around January 1, 2010. (Tr. 46).

Plaintiff stated that he was last seen by a doctor when he had a blood pressure screening and received medication for high blood pressure in September or November 2009. He said he still gets dizzy occasionally when he eats certain things. He said that he has gone to the emergency room and that the last time was in November when he had the Demerol injection for his back pain.[2]

---

[2]According to the medical records, the injection of Demerol, Ativan and Phenergan occurred on August 10, 2009. (Tr. 200-01). Plaintiff's last visit to a doctor before the hearing was on October 6, 2009 for treatment of his high blood pressure. (Tr. 196).

Williams testified that he could perform a job that allowed him to alternate sitting and standing at will, if he could get out of bed in the morning to go to work. (Tr. 47). He said he hurts so badly that he cannot get out of bed at least three times a week and that he stays in bed all day on such days. He stated that his mother brings food to him in bed, but he gets up to use the bathroom. He testified that he is usually able to get out of bed around 10:00 a.m. the next day after spending a day in bed. He said he tosses and turns all night, every night, even though he takes Tylenol P.M. most nights, but he can still feel himself tossing in his sleep. (Tr. 48-49).

C.    Vocational Expert Testimony

A vocational expert, Patricia Knight, testified at the hearing that plaintiff's past relevant work as a sawmill laborer was either semi-skilled or unskilled and at a heavy exertional level; his work as a hand packager was unskilled, but at the medium level; and his work as a stock clerk was semi-skilled and heavy. (Tr. 50).

The ALJ posed a hypothetical of an individual with plaintiff's age, education and work history with the residual functional capacity for sedentary work, who must alternate sitting and standing hourly and avoid industrial vibrations. Knight testified that such a person could not perform plaintiff's past relevant work. (Tr. 50). She testified that the hypothetical claimant could perform sedentary, unskilled jobs, such as information clerk, order clerk and general office clerk, which are available in significant numbers in the state and national economies. She stated that a person who was unable to maintain

attention and concentration for a two-hour block of time or who routinely had unscheduled absences averaging twice a month would not be able to perform any of these jobs. (Tr. 51).

Upon questioning by plaintiff's attorney, Knight testified that, according to the Dictionary of Occupational Titles, the order clerk job requires a reasoning level of three, a mathematics level of one and a language level of two.[3]  She said that the information clerk job has a reasoning level of three, mathematics of two and language of three, while a general office clerk position requires a reasoning level of three, a mathematics level of two and a language level of two.  Knight reiterated that all of these are unskilled, sedentary jobs. (Tr. 52-54).

D.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 22-23).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

_____

[3]The Dictionary of Occupational Titles includes a "General Educational Development"scale, which

> embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.  This is education of a general nature which does not have a recognized, fairly specific occupational objective. . . .  The GED Scale is composed of three divisions:  Reasoning Development, Mathematical Development, and Language Development.

Dictionary Of Occupational Titles App. C, Part III (http://www.occupationalinfo.org/appendxc_1.html). The scale defines levels of one to six, with the higher numbers indicating more complex skills.

E.    Plaintiff's Appeal

    1.    Substantial evidence supports the ALJ's finding that plaintiff's impairments do not meet or medically equal Listing 1.04 for disorders of the spine.

Williams contends that the ALJ erred by finding at the third step of the sequential evaluation that his impairments do not meet or medically equal Listing 1.04 for presumptive disability based on spinal disorders. He argues that he meets or medically equals either Listing 1.04A or 1.04C. The ALJ noted that, despite evidence of degenerative disc disease with nerve root compromise at L5-S1 and reduced motor function in plaintiff's right leg, the consultative medical examiner, Gopal Damerla, M.D., observed on June 13, 2009 that Williams had no sensory deficits and that his deep tendon reflexes were normal. Therefore, the ALJ determined that plaintiff did not have the requisite sensory or reflex loss accompanying his muscle weakness to meet Listing 1.04A. The ALJ also found no record evidence of positive straight leg raising in both the seated and supine positions, which Listing 1.04A also requires when the claimant alleges disability based on lower back pain. (Tr. 20-21).

Listing 1.04 provides that a claimant will be found disabled if he has:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by

sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

  . . .

C. Lumbar spinal stenosis resulting in pseudoclaudication,[4] established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A, C (emphasis added).

An inability to ambulate effectively, as defined in Section 1.00B2(b),

means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

Id. § 1.00B2(b) (emphasis added).

Plaintiff argues that the ALJ should not have relied solely on Dr. Damerla's June 13, 2009 opinion that he had no sensory loss. Williams asserts that the ALJ should have accepted other medical evidence of sensory loss dated February 8, 2008, which was eight months before plaintiff's alleged onset date, and on October 25, 2010, which was six months after the ALJ's decision. (The post-decision evidence is attached to plaintiff's motion to supplement the transcript. Record Doc. No. 15-4.) Plaintiff also contends that,

---

[4]Claudication is "limping or lameness." Dorland's Illustrated Medical Dictionary 361 (29th ed. 2000) (hereinafter "Dorland's"). "Pseudoclaudication, which may result from lumbar spinal stenosis, is manifested as pain and weakness, and may impair ambulation. Symptoms are usually bilateral, in the low back, buttocks, or thighs, although some individuals may experience only leg pain . . . ." 20 C.F.R. Part 404, Subpart P, App. 1, § 1.00K(3).

because Dr. Damerla noted that he had a positive straight leg raising test, the ALJ should have re-contacted the doctor to clarify whether the test was performed in both the seated and supine positions.

Whether an impairment or combination of impairments meets a Listing is a medical question that can be answered <u>only</u> by medical evidence.  20 C.F.R. §§ 404.1526(b), 416.926(b); <u>McCuller v. Barnhart</u>, 72 F. App'x 155, 158 (5th Cir. 2003); <u>Selders v. Sullivan</u>, 914 F.2d 614, 619 (5th Cir. 1990); <u>McKnight v. Astrue</u>, No. 07-1654, 2008 WL 4387114, at *3 (W.D. La. Aug 15, 2008), <u>report & recommendation adopted</u>, 2008 WL 5746939 (W.D. La. Sept. 23, 2008), <u>aff'd</u>, 340 F. App'x 176 (5th Cir. 2009).

"The specified medical criteria [in a Listing] are designed to be demanding and stringent because they lead to a presumption of disability making further inquiry unnecessary." <u>Anderson v. Astrue</u>, No. 3:11-CV-0051-K-BH, 2011 WL 3331821, at *6 (N.D. Tex. July 11, 2011), <u>report & recommendation adopted</u>, 2011 WL 3347857 (N.D. Tex. July 29, 2011) (citing <u>Sullivan v. Zebley</u>, 493 U.S. 521, 532 (1990); <u>Falco v. Shalala</u>, 27 F.3d 160, 162 (5th Cir. 1994)).

"An impairment that manifests only <u>some</u> of the requisite criteria, no matter how severely, does <u>not</u> qualify.  If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that listings-level impairments are not present." <u>Gewin v. Astrue</u>, No. 10-1008, 2011 WL 3924232, at *3 (W.D. La. Aug. 3, 2011), <u>report & recommendation adopted</u>, 2011 WL

3954877 (W.D. La. Sept. 6, 2011) (citing Zebley, 493 U.S. at 530-31; Selders, 914 F.2d at 620) (emphasis added); accord Taylor v. Astrue, No. 3-10-CV-1158-O-BD, 2011 WL 4091506, at *8 (N.D. Tex. June 27, 2011), report & recommendation adopted, 2011 WL 4091503 (N.D. Tex. Sept. 14, 2011); Ford v. Astrue, No. H-09-00225, 2010 WL 786917, at *8 (S.D. Tex. Mar. 8, 2010).

Williams has failed to identify substantial medical evidence that he meets all the criteria of Listing 1.04A or 1.04C. His previous application for disability was denied on October 16, 2008. Thus, he was already adjudicated as non-disabled prior to that date, and that finding is final. Although the ALJ considered all of plaintiff's medical records, including those pre-dating his alleged onset date of October 17, 2008, the ALJ noted that the previous denial had taken into account the February 8, 2008 findings that Williams had decreased sensation to pinprick along the S1 dermatome and decreased right patellar[5] reflexes. (Tr. 22, 182, 184). None of the medical providers who examined plaintiff after October 14, 2008 and before the ALJ's decision found any sensory or reflex loss. (Tr. 168-69, 190, 211). "'Conflicts of evidence are for the Commissioner, not the courts, to resolve.'" Byrd v. Comm'r of Social Sec., 368 F. App'x 542, 543 (5th Cir. 2010) (quoting Perez, 415 F.3d at 461). Therefore, even if plaintiff's straight leg raising test at Dr. Damerla's office on June 13, 2009 or at any other relevant time was positive in both the sitting and supine positions, which is not supported either by any evidence that

_____

[5]The patella is the knee cap. Dorland's at 1335.

the ALJ considered or by the additional evidence that Williams provided to the Appeals Council, he could not satisfy all of the stringent criteria of Listing 1.04A.

The ALJ did not err by failing to contact Dr. Damerla for clarification of whether plaintiff had performed the straight leg raising test in both the sitting and supine position or, if not, for additional testing in both positions. "An ALJ need recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled." Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004) (citing 20 C.F.R. § 20 C.F.R. §§ 404.1512(e), 404.1527(f)(2)(iii)); Mancera v. Barnhart, 67 F. App'x 248, 2003 WL 21145781, at *1 n.1 (5th Cir. 2003) (citing 20 C.F.R. § 404.1512(e)). Here, the evidence was adequate for the ALJ to find that Williams was not presumptively disabled under Listing 1.05, and the ALJ did not err by failing to re-contact Dr. Damerla to clarify just one of the many criteria of the listing. Id.

Moreover, if the ALJ erred by failing to contact Dr. Damerla, plaintiff must show that the procedural error prejudiced his substantive rights. "Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected." Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007). Even if Williams had a positive straight leg raising test in both the sitting and supine positions, he cannot establish that he meets all the criteria of Listing 1.04A because the medical evidence from the relevant time period does not establish sensory or reflex loss. Thus,

he was not substantially prejudiced by the lack of an additional report or straight leg raising testing from Dr. Damerla.

In addition, plaintiff does not meet Listing 1.04C. He has failed to provide any evidence that he is unable to ambulate effectively as defined by Section 1.00(B)(2)(b), which is incorporated into Listing 1.04C. There is <u>no</u> evidence in the record that he cannot walk without the use of a hand-held assistive device that limits the functioning of <u>both</u> upper extremities. "The record indicates that [plaintiff] is able to walk with the help of a single cane, not a walker, two crutches or two canes." <u>Bullock v. Astrue</u>, 277 F. App'x 325, 328 (5th Cir. 2007). Therefore, he does not satisfy the definition of inability to ambulate effectively required to meet Listing 1.04C. <u>Id.</u>

Williams contends alternatively that his impairments are medically equivalent to Listing 1.04. "If the claimant argues for medical equivalency, the standard is similarly demanding. And the claimant may not establish listings level severity through subjective testimony." <u>R.O.L. v. U.S. Comm'r Social Sec. Admin.</u>, No. 09-cv-0253, 2010 WL 996422, at *2 (W.D. La. Mar. 17, 2010) (citing <u>Zebley</u>, 493 U.S. at 531-32; <u>Selders</u>, 914 F.2d at 619).

> For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to <u>all</u> the criteria for the one most similar listed impairment. A claimant cannot qualify for benefits under the "equivalence" step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment.

Zebley, 493 U.S. at 531 (citing 20 C.F.R. § 416.926(a); Soc. Sec. Ruling SSR 83-19, at 91-92).

The medical evidence from the administrative record that Williams cites in his memorandum does not establish that his combination of impairments are equivalent to Listing 1.04, and the evidence that he cites from examinations that occurred after the ALJ's decision is repetitive of evidence that the ALJ considered. Plaintiff's mere recitation in his memorandum, Record Doc. No. 14-2 at p. 17, of positive straight leg raising tests; physical limitations, such as muscle spasm or inability to squat; other diagnoses, such as obesity and hypertension; and his use of medications for pain, does not establish the objective medical findings necessary for listing level severity. As to his gait, Dr. Damerla observed on June 13, 2009 that Williams needed an assistive device to ambulate, and it was noted that he walked with difficulty at an emergency room visit on August 10, 2009. (Tr. 202). However, at another emergency room visit on May 4, 2009, both the triage nurse and the physician noted that Williams ambulated without difficulty, and straight leg raising tests were negative on that date. (Tr. 208, 210, 211). His hypertension was under control when he saw Dr. Damerla (Tr. 167) and appears to have been uncontrolled only when he did not take medication. (Tr. 196).

Plaintiff's evidence is therefore insufficient to demonstrate that he medically equaled the objective criteria of Listing 1.04. To the extent that his physical limitations, pain and diagnoses contributed to functional restrictions, the ALJ addressed such

limitations at step four of the sequential evaluation. Accordingly, plaintiff's first assignment of error lacks merit.

### 2. Substantial evidence supports the ALJ's residual functional capacity assessment.

At the fourth step of the evaluation, the ALJ must determine, based on all of the relevant medical and other evidence in the record, the claimant's residual functional capacity, which is his ability to do physical and mental tasks on a sustained basis despite limitations from his impairments. Cline v. Astrue, 577 F. Supp. 2d 835, 847-48 (N.D. Tex. 2008) (citing Perez, 415 F.3d at 462; 20 C.F.R. § 416.945(a)(3)). In determining residual functional capacity, "the Commissioner must consider all of a claimant's impairments, including those that are not severe." Giles v. Astrue, 433 F. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(e), 404.1545).

The ALJ found that Williams has the residual functional capacity to perform sedentary work, except that he must be able to alternate between sitting and standing on an hourly basis and must avoid industrial vibration. Based on the testimony of the vocational expert, the ALJ held at the fifth step that Williams can perform work that is available in the state and national economies, such as information clerk, order clerk and general office clerk.

Substantial evidence supports the ALJ's decision. Most of the medical evidence in the record predates plaintiff's alleged onset date of October 17, 2008, and was the

basis of a prior finding that he was not disabled as of October 16, 2008. Before his alleged onset date, plaintiff had two MRI's of his lumbar spine, which the ALJ considered in the instant case. The only new imaging in the record after that date was a lumbar spine x-ray that was interpreted by Dr. Damerla and was consistent with the prior MRI findings. The ALJ noted that he could find no documentation of any worsening of plaintiff's condition since the October 16, 2008 finding that he was not disabled and could perform sedentary work. (Tr. 23-24).

The ALJ accorded "significant weight" to Dr. Damerla's findings, which the ALJ found were consistent with the record as a whole. (Tr. 24). Dr. Damerla diagnosed Williams with lumbago,[6] citing decreased range of motion in his lumbar spine, positive straight leg raising on the right,[7] significant symptoms of radiculopathy and decreased motor strength in the right leg, without any sensory or other neurological deficits. No other medical evidence after the alleged onset date contradicts Dr. Damerla's report. The only contradictory evidence prior to the alleged onset date were the findings on February 8, 2008 of decreased sensation to pinprick along the S1 dermatome and decreased right patellar reflexes. (Tr. 182, 184).

---

[6]Lumbago is pain in the lumbar region. Dorland's at 1029.

[7]Dr. Damerla stated in his final impression that straight leg raising was positive on the left side. (Tr. 169). This appears to be an error, as he stated in his physical examination findings on the previous page that the straight leg raising test was positive on the right side and negative on the left side. (Tr. 168). This is consistent with the other medical and testimonial evidence.

As previously discussed, those contradictory findings were already taken into account in the Commissioner's prior decision that plaintiff was not disabled as of October 16, 2008. Even if the ALJ considered those findings, he was entitled to weigh the evidence and resolve the conflict in favor of Dr. Damerla's opinion. Escalante v. Astrue, 286 F. App'x 179, 180 (5th Cir. 2008) (citing Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990)); Newton, 209 F.3d at 455. The ALJ's residual functional capacity assessment of plaintiff's abilities is substantially supported by Dr. Damerla's opinion.

In addition, the ALJ thoroughly reviewed all of the medical evidence and found that plaintiff's statements regarding the severity of his pain and his functional limitations were not substantially supported by the entire record and were not entirely credible. Williams argues that the ALJ's credibility determination is unsupported.

Pain may constitute a non-exertional impairment that can limit the jobs a claimant would otherwise be able to perform. Beck v. Barnhart, 205 F. App'x 207, 212 (5th Cir. 2006); Carnahan v. Apfel, 247 F.3d 241, 2001 WL 43543, at *3 (5th Cir. 2001); Selders, 914 F.2d at 618.

However, the mere existence of pain does not establish disability. Pain constitutes a disabling condition when it is constant, unremitting and wholly unresponsive to therapeutic treatment. Doss v. Barnhart, 137 F. App'x 689, 690 (5th Cir. 2005); Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001). Subjective complaints of

pain or other symptoms must be corroborated by objective medical evidence, <u>Quijas v.</u> <u>Astrue</u>, 298 F. App'x 391, 393 (5th Cir. 2008) (citing <u>Chambliss</u>, 269 F.3d at 522), and the alleged symptoms may be discounted when they are not consistent with the objective medical evidence. <u>Brown v. Astrue</u>, 344 F. App'x 16, 21 (5th Cir. 2009); <u>Hernandez v.</u> <u>Astrue</u>, 278 F. App'x 333, 340 (5th Cir. 2008) (citing <u>Anthony v. Sullivan</u>, 954 F.2d 289, 295 (5th Cir. 1992)); <u>Dunbar v. Barnhart</u>, 330 F.3d 670, 672 (5th Cir. 2003).

It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. <u>Jenkins v.</u> <u>Astrue</u>, 250 F. App'x 645, 647 (5th Cir. 2007); <u>Chambliss</u>, 269 F.3d at 522. Whether a claimant is able to work despite some pain is within the province of the administrative agency, and the agency's determination should be upheld if supported by substantial evidence. <u>Jenkins</u>, 250 F. App'x at 647; <u>Chambliss</u>, 269 F.3d at 522.

The ALJ also has the responsibility to evaluate the credibility of witnesses, <u>Masterson v. Barnhart</u>, 309 F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of determinations that the ALJ is best positioned to make.'" <u>Spruill v. Astrue</u>, 299 F. App'x 356, 358 (5th Cir. 2008) (quoting <u>Falco</u>, 27 F.3d at 164). Thus, the ALJ's credibility evaluation is entitled to <u>considerable deference</u> by this court. <u>McKnight v. Astrue</u>, 340 F. App'x 176, 181 (5th Cir. 2009); <u>Bedford v. Astrue</u>, 236 F. App'x 957, 962 (5th Cir. 2007). The ALJ's explanation of his reasons for finding plaintiff not entirely credible is all that is required. <u>James J. Flanagan Stevedores, Inc.</u>

v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 163); Godbolt v. Apfel, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999).

The ALJ credited Williams's testimony that he needed to alternate sitting and standing. The ALJ explained why plaintiff's other subjective symptoms and alleged limitations were not credible and were inconsistent with the clinical and objective findings, including the lack of any change in the medical evidence of his symptoms and objective findings since the prior finding of nondisability on October 16, 2008, the conservative treatment that he had undergone, his noncompliance with an orthopedic appointment, his report to Dr. Damerla that he could sit for six hours and could lift a gallon of milk, and the ALJ's observations of plaintiff's demeanor and behavior at the hearing. (Tr. 24). Williams was also noted to be noncompliant with blood pressure medication on October 6, 2009. (Tr. 196). Furthermore, he sought medical treatment only four times during the 12 months after his alleged onset date. Although he was not able to get an appointment with a neurologist until August 2010, five months after the hearing date, he sought no treatment at all during the five months before the hearing date. At an emergency room visit on August 10, 2009, he reported that he took no medications and was not seeing a doctor for his medical problems. (Tr. 202). A claimant's lack of need for medication or failure to seek treatment is a relevant factor to consider in determining the severity of an alleged impairment and may be used in conjunction with the medical reports to discount plaintiff's complaints of disabling pain or other

23

limitations. Doss, 137 F. App'x at 690; Anthony, 954 F.2d at 295; Griego, 940 F.2d at 945; Villa v. Sullivan, 895 F.2d 1019, 1024 (5th Cir. 1990).

Because substantial evidence supports the ALJ's residual functional capacity assessment, this assignment of error lacks merit.

### 3. The Appeals Council did not err by failing to consider allegedly new and material evidence that plaintiff submitted after the ALJ's decision.

In conjunction with his separate motion to submit new and material medical records, Williams argues in his memorandum in support of his motion for summary judgment that the allegedly new and material evidence requires reversal of the ALJ's decision. For the following reasons, the motion to submit new and material evidence is DISMISSED AS MOOT.

Plaintiff submitted the new evidence to the Appeals Council in two separate submissions. The Appeals Council considered the evidence and found on both occasions that the evidence did not provide a basis for changing the ALJ's decision because it related to a later time period and did not affect the decision whether Williams was disabled between October 17, 2008 and April 27, 2010. (Tr. 1-2, 5-6).

Citing Higginbotham v. Barnhart, 405 F.3d 332, 334 (5th Cir. 2005), plaintiff argues first that the evidence submitted to the Appeals Council is part of the Commissioner's final decision and is therefore part of the record that this court must review on appeal. Alternatively, he contends that the same evidence being submitted to

this court in his motion to supplement the administrative record is new and material, should be added to the record and requires a remand to the Commissioner for full consideration.

Plaintiff's first argument is correct. In his motion to supplement the transcript, he has not presented any <u>new</u> evidence to this court. He had already provided the evidence to the Appeals Council,

> and the Appeals Council addressed that evidence, specifically stating that "this information does not provide a basis for changing the Administrative Law Judge's decision." In <u>Higginbotham v. Barnhart</u>, 405 F.3d 332, 334 (5th Cir. 2005), this court held that the Commissioner's final decision includes the Appeals Council's denial of a claimant's request for review, and that <u>new evidence submitted to [and considered by] the Appeals Council becomes part of the administrative record</u>. It follows, therefore, that the test set forth in [42 U.S.C.] § 405(g) for whether evidence newly submitted to the district court requires remand to the Commissioner has no application to this case.

<u>Jones v. Astrue</u>, 228 F. App'x 403, 406-07 (5th Cir. 2007) (emphasis added); <u>accord</u> <u>Booker v. Astrue</u>, No. 3:10-CV-1940-P, 2011 WL 4031096, at *7 (N.D. Tex. Aug. 15, 2011), <u>report & recommendation adopted</u>, 2011 WL 4048408 (N.D. Tex. Sep. 12, 2011); <u>Primm v. Astrue</u>, No. 10-0354, 2010 WL 5677051, at *3 (W.D. La. Nov. 30, 2010), <u>report & recommendation adopted</u>, 2011 WL 332705 (W.D. La. Jan. 31, 2011).

Therefore, "the district court should review and consider evidence that the claimant submits to the Appeals Council but failed to present to the ALJ. That new evidence is considered part of the record on appeal and, when the Appeals Council

considers it, the evidence constitutes evidence upon which the decision complained of is based." Metcalf ex rel. ANM v. U.S. Comm'r Social Sec. Admin., No. 08-cv-1812, 2009 WL 5174368, at *4 (W.D. La. Dec. 18, 2009) (citing Jones, 228 F. App'x at 407; Higginbotham, 405 F.3d at 332).

Following Higginbotham and Jones, district courts in the Fifth Circuit have concluded that the court should review the entire record to determine whether "the Appeals Council has failed to properly evaluate new medical evidence which is so inconsistent with the ALJ's findings that it undermines the ultimate disability determination" and requires that the case "be remanded so that the Appeals Council fully can evaluate the treating source statement as required by law." Booker, 2011 WL 4031096, at *7; see also Jones, 228 F. App'x at 407 ("Jones's new evidence did not so contradict earlier evidence that a 'weighing' of new and old evidence would be required. . . . [The new] report was . . . not inconsistent with two earlier psychological evaluations" that the ALJ had considered.); Henderson v. Astrue, No. 3:10-CV-0589-D, 2011 WL 540286, at *5 (N.D. Tex. Feb. 15, 2011) ("The court must determine whether, in light of the new evidence, the Commissioner's findings are still supported by substantial evidence."); Metcalf ex rel. ANM, 2009 WL 5174368, at *5 (same).

Accordingly, plaintiff's motion to submit new evidence is DISMISSED AS MOOT. For the following reasons, I find that the evidence that he submitted to the

Appeals Council was not so inconsistent with the record that was before the ALJ that a remand is required so that the Commissioner may re-weigh the evidence.

As the Appeals Council stated, the evidence post-dates the ALJ's decision. The July 6, 2010 record from Lallie Kemp Medical Center Emergency Department consists solely of Discharge Instructions, stating that Williams was diagnosed with exacerbation of chronic back pain and was prescribed medications. It does not report any objective or clinical findings. Record Doc. No. 15-3. The diagnosis is consistent with plaintiff's previous medical records and adds nothing that the ALJ had not already considered.

The next record consists of outpatient progress notes from the LSU Health Care Services neurology clinic dated August 23, 2010. Williams presented for evaluation of chronic back pain with radiation to his right leg and toes. He reported numbness and weakness in his right leg, including foot drop.[8] This visit occurred four months after the hearing date and ten months after the last time that plaintiff was examined prior to the ALJ's decision. The examiners noted that Williams had not fallen and was not at risk of falling. He had no appreciable deficit in his gait, ambulated without any assistive device or assistance, and was able to rise from a chair without assistance. Record Doc. No. 15-4 at pp. 6, 8. He reported that his pain improved with Lortab.[9] He had reduced strength

---

[8]Footdrop or drop foot is "dropping of the foot from a peroneal [fibular or pertaining to the outer side of the leg] or tibial nerve lesion that causes paralysis of the anterior muscles of the leg." Dorland's at 696, 1360.

[9]Lortab contains hydrocodone, a narcotic pain reliever, and acetaminophen, a non-narcotic pain reliever. It is used to relieve moderate to severe pain. Drugs.com, http://www.drugs.com/lortab.html

in his right leg. The records contain no report of a new MRI having been done, and the physician's notes regarding plaintiff's MRI results are consistent with his two prior MRI's, which the ALJ considered. Williams received prescriptions for medication and was referred to neurosurgery for evaluation. Id. at pp. 6-7. With the exception of his new complaint of foot drop, a symptom that had not previously been reported, this record is consistent with Williams's prior records.

The final records are from the LSU Health Care Services neurology clinic dated October 25, 2010, six months after the ALJ's decision and one year after plaintiff was examined by any physician during the relevant time period before the ALJ's decision. Dr. Jonathan G. Guterman noted that Williams had no new complaints. The doctor's description of plaintiff's MRI results appears to be consistent with his past MRI results. Physical examination revealed loss of sensation to pain, temperature and vibration in both plaintiff's right leg and right arm. This is the first time that any sensory loss was reported in his right arm. Although Williams had some difficulty with tandem walking, he was able to walk steadily and to complete the task. He had a steady, mildly wide-based gait, decreased motor strength in his right leg, decreased reflexes in his right knee and a positive straight leg raising test on the right. Dr. Guterman referred him to neurosurgery, pain management, physical therapy and occupational therapy. Record

(visited on Dec. 6, 2011).

Doc. No. 15-4 at pp. 1-2.  Other than the new symptom in plaintiff's right arm, these results do not conflict with the earlier medical records that the ALJ considered.

The evidence submitted to the Appeals Council does not undermine the ALJ's disability determination and does not provide any substantial evidence that the Appeals Council erred by rejecting the evidence as a basis to reverse the ALJ's decision.  To the extent that Williams may have developed any increased symptoms or newly diagnosed conditions that developed <u>after</u> April 27, 2010, such as decreased sensation in his right arm or foot drop, the new medical records demonstrate at best a deterioration of a previously non-disabling condition.  "Remand [cannot] be based on new evidence of a subsequent deterioration of what was previously correctly held to be a non-disability condition."  <u>Lenoir v. Apfel</u>, 234 F.3d 29, 2000 WL 1568184, at *1 (5th Cir. Sept. 14, 2000); <u>accord</u> <u>McLendon v. Barnhart</u>, 184 F. App'x 430, 432 (5th Cir. 2006).  If plaintiff has evidence that his condition deteriorated to the point that he became disabled <u>after</u> April 27, 2010, he can use the evidence to apply directly to the Social Security Administration for benefits for the appropriate period.  <u>Shave v. Apfel</u>, 238 F.3d 592, 597 (5th Cir. 2001)); <u>Falco</u>, 27 F.3d at 164 n.20.

Plaintiff's third assignment of error lacks merit.

<u>CONCLUSION</u>

Substantial evidence supports the ALJ's finding that plaintiff's impairments do not meet or medically equal Listing 1.04 for disorders of the spine.  Substantial evidence

also supports the ALJ's residual functional capacity assessment. The Appeals Council did not err by failing to consider the new evidence that plaintiff submitted to it after the ALJ rendered his decision.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[10]

New Orleans, Louisiana, this ____9th____ day of December, 2011.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[10]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.